IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

---

B.E. TECHNOLOGY, LLC,      )
                            )
     Plaintiff,        )
                            )
v.                     )    No.: 2:12-cv-02831-JPM-tmp
                            )
APPLE INC.,           )
                            )
     Defendant.        )

---

**ORDER DENYING MOTION TO TRANSFER VENUE**

---

Before the Court is Defendant Apple Inc.'s ("Defendant" or "Apple") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), filed December 20, 2012. (ECF No. 22.) For the reasons that follow, the Motion is DENIED.

**I. BACKGROUND**

This case concerns Defendant Apple's alleged infringement of United States Patent No. 6,628,314 (the "'314 patent") and United States Patent No. 6,771,290 (the "'290 patent"). (ECF No. 1.) Plaintiff B.E. Technology, LLC ("Plaintiff or "B.E.") is the assignee of both the '314 and '290 patents (ECF No. 30 at 2), currently owning "all right, title, and interest throughout the period of the infringement" in the respective patents (ECF No. 1 ¶¶ 13, 16).

B.E. alleges that Apple infringed the '314 patent "by using a method of providing demographically targeted advertising that

directly infringes at least Claim 11 of the '314 patent either literally or under the doctrine of equivalents." (Id. ¶ 14.) Further, B.E. alleges that Apple infringed the '290 patent "by using, selling, and offering to sell in the United States tablet computer products that directly infringe at least Claim 2 of the '290 patent either literally or under the doctrine of equivalents." (Id. ¶ 17.)

B.E. filed a Complaint in this Court on September 22, 2012. (ECF No. 1.) Apple filed its Motion to Transfer Venue on December 20, 2012 (ECF No. 22.), and filed its Answer to the Complaint and Counterclaim on December 31, 2012 (ECF No. 26). B.E. filed its Memorandum in Opposition to Defendant's Motion to Transfer Venue on January 7, 2013. (ECF No. 30.) With leave of Court, Apple filed a Reply Memorandum in Support of Its Motion to Transfer on January 29, 2013. (ECF No. 39.) On February 11, 2013, Apple filed a Motion to Stay pending resolution of its Motion to Transfer Venue. (ECF No. 41.) The Court granted Apple's Motion to Stay on February 11, 2013. (ECF No. 42.)

Apple seeks to transfer this case to the Northern District of California, where its headquarters, design, and development facilities are located. (ECF No. 22-1 at 1.) To support its Motion, Apple notes that Plaintiff filed eighteen other cases involving the patents-in-suit, and the "large majority" of those named defendants are located in the Northern District of

California, as well.  (Id. at 2.)  Apple asserts that all of its
potential witnesses are located in the Northern District of
California.  (Id. at 3.)  Further, Apple asserts that "[n]ot a
single relevant document is known to be located in" the Western
District of Tennessee, and that there are no "known third-party
witnesses" located in the transferor district.  (Id. at 2.)

B.E. opposes Apple's Motion to Transfer.  B.E. is a limited
liability company incorporated in Delaware.  (ECF No. 1 ¶ 2.)
B.E. was originally registered in Michigan, but formally
registered to conduct business in Tennessee in September 2012.
(ECF No. 30 at 2.)  B.E. contends that Memphis, Tennessee, is
its principal place of business.  (ECF No. 1 ¶ 2.)  Martin David
Hoyle ("Hoyle"), B.E.'s founder and CEO, is the named-inventor
of both the '314 and '290 patents.  (ECF No. 30 at 2.)  Hoyle
has been a resident of Tennessee since April, 2006.  (Id.)

B.E. argues that transfer is inappropriate because it has
substantial connections with this district.  B.E. argues that
Hoyle has been "present in this District since 2006, and B.E.
since at least 2008," and this district is B.E.'s principal
place of business.  (Id. at 5.)  B.E. also argues that none of
its witnesses are located in the Northern District of
California.  (Id. at 8.)  Further, B.E. argues that its
corporate documents, including documents relating to the

"conception and reduction to practice" of the patents-in-suit, are located in this District.  (Id. at 4-7.)

## II. STANDARD

Apple moves the Court to transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a).  (ECF No. 22-1 at 1.)  The statute provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  "As the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate."  Reese v. CNH Am. LLC, 574 F.3d 315, 320 (6th Cir. 2009).

In determining whether to transfer a case under § 1404(a), the court must first determine whether the claim could have been brought in the transferee district.  28 U.S.C. § 1404(a) (allowing transfer to any other district in which the claim "might have been brought").  Once the court has made this threshold determination, the court must then determine whether party and witness "convenience" and "the interest of justice" favor transfer to the proposed transferee district.  Reese, 574 F.3d at 320; Esperson v. Trugreen Ltd., No. 2:10-cv-02130-STA-cgc, 2010 WL 4362794, at *5 (W.D. Tenn. Oct. 5, 2010), adopted

4

2010 WL 4337823 (W.D. Tenn. Oct. 27, 2010).  In weighing these statutory factors, the court may still consider the private- and public-interest factors set forth in the pre-Section 1404(a) case, Gulf Oil v. Gilbert, 330 U.S. 501, 508-09 (1947), but courts are not burdened with "preconceived limitations derived from the forum non conveniens doctrine."  Norwood v. Kirkpatrick, 349 U.S. 29, 31 (1955) (quoting All States Freight v. Modarelli, 196 F.2d 1010, 1011 (3d Cir. 1952)) (internal quotation marks omitted); Esperson, 2010 WL 4362794, at *5.  The United States Court of Appeals for the Sixth Circuit has stated that when deciding "a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'"  Moore v. Rohm & Haas Co., 446 F.3d 643, 647 n.1 (6th Cir. 2006).

Additionally, the "interest of justice" factor has been interpreted broadly by courts, influenced by the individualized circumstances of each case.  The United States Court of Appeals for the Federal Circuit has set forth a non-exhaustive list of pertinent public-interest factors:

> The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized

5

> interests decided at home; (3) the familiarity of the
> forum with the law that will govern the case; and (4)
> the avoidance of unnecessary problems of conflicts of
> laws or in the application of foreign law.

In re Acer Am. Corp., 626 F.3d 1252, 1254 (Fed. Cir. 2010); see
also In Re Nintendo Co., Ltd., 589 F.3d 1194, 1198 (Fed. Cir.
2009) (finding the local-interest factor weighed heavily in
favor of transfer); Cincinnati Ins. Co. v. O'Leary Paint Co.,
676 F. Supp. 2d 623, 633 (W.D. Mich. 2009) (considering
additional factors such as the relative docket congestion of
each district).

Initially, B.E. argues that there is a strong presumption
in favor of its choice of forum, and its choice of forum should
not be disturbed unless the defendant carries its burden to
demonstrate that the balance of convenience strongly favors
transfer. (ECF No. 30 at 4-6.) B.E.'s argument is erroneously
derived from the more stringent forum-non-conveniens standard.
Compare Hunter Fan Co. v. Minka Lighting, Inc., No. 06-2108
Ml/P, 2006 WL 1627746 (W.D. Tenn. June 12, 2006) (applying the
appropriate private- and public-interest factors but relying on
the forum-non-conveniens doctrine to accord strong deference to
the plaintiff's choice of forum), with OneStockDuq Holdings,
LLC v. Becton, Dickinson, & Co., No. 2:12-cv-03037-JPM-tmp, 2013
WL 1136726, at *3 (W.D. Tenn. Mar. 18, 2013), and Roberts
Metals, Inc. v. Florida Props. Mktg. Grp., Inc., 138 F.R.D. 89,

92-93 (N.D. Ohio 1991) (recognizing defendants need to make a
lesser showing to overcome plaintiff's choice of forum under
§ 1404(a)), aff'd per curiam, 22 F.3d 1104 (6th Cir. 1994).
Although there is a strong presumption in favor of the
plaintiff's choice of forum under the doctrine of forum non
conveniens, under § 1404(a), a plaintiff's choice of forum may
be considered, but is entitled to less deference.  Discussing
the difference between the common-law doctrine of forum non
conveniens and the federal transfer-of-venue statute in Norwood,
the Supreme Court stated,

> When Congress adopted § 1404(a), it intended to
> do more than just codify the existing law on forum non
> conveniens. . . . [W]e believe that Congress, by the
> term "for the convenience of parties and witnesses, in
> the interest of justice," intended to permit courts to
> grant transfers upon a lesser showing of
> inconvenience.  This is not to say that the relevant
> factors have changed or that the plaintiff's choice of
> forum is not to be considered, but only that the
> discretion to be exercised is broader.

Norwood, 349 U.S. at 32; see also Lemon v. Druffel, 253 F.2d
680, 685 (6th Cir. 1958) ("The choice of the forum by the
petitioner is no longer as dominant a factor as it was prior to
the ruling in Norwood v. Kirkpatrick[.]"); Esperson, 2010 WL
4362794, at *5-6.

Defendant's burden under § 1404(a) is to demonstrate that a
change of venue to the transferee district is warranted.  See
Eaton v. Meathe, No. 1:11-cv-178, 2011 WL 1898238, at *2 (W.D.

7

Mich. May 18, 2011); Amphion, Inc. v. Buckeye Elec. Co., 285 F.
Supp. 2d 943, 946 (E.D. Mich. 2003); Roberts Metals, Inc., 138
F.R.D. at 93.  "Merely shifting the inconvenience from one party
to another does not meet Defendant's burden."  McFadgon v. Fresh
Mkt., Inc., No. 05-2151-D/V, 2005 WL 3879037, at *2 (W.D. Tenn.
Oct. 21, 2005).  "[T]he movant must show that the forum to which
he desires to transfer the litigation is the *more convenient one
vis a vis* the Plaintiff's initial choice."  Roberts Metals,
Inc., 138 F.R.D. at 93 (quoting Mead Corp. v. Oscar J. Boldt
Constr. Co., 508 F. Supp. 193, 198 (S.D. Ohio 1981)) (internal
quotation marks omitted).  If the court determines that the
"balance between the plaintiff's choice of forum and defendant's
desired forum is even, the plaintiff's choice of [forum] should
prevail."  Stewart v. Am. Eagle Airlines, Inc., No. 3:10-00494,
2010 WL 4537039, at *2 (M.D. Tenn. Nov. 3, 2010).

**III. ANALYSIS**

    Apple asserts that B.E. could have brought this action in
the Northern District of California.  (See ECF No. 22-1 at 6.)
B.E. does not dispute this assertion.  (See ECF No. 30 at 4.)
The Court agrees with the parties that B.E. could have brought
suit in the Northern District of California as personal
jurisdiction over Apple exists in that district.  Therefore, the
only issue remaining is whether the balance of the statutory
factors — the convenience to the witnesses, the convenience to

the parties, and the interest of justice — favors transfer to
the Northern District of California.  The Court will address
each statutory factor separately and balance these factors to
determine whether transfer to the Northern District of
California is proper pursuant to § 1404(a).

 **A. Convenience of the Witnesses**

 When asserting that a transferee district is more
convenient for witnesses, a party "must produce evidence
regarding the precise details of the inconvenience" of the forum
chosen by the plaintiff.  Esperson, 2010 WL 4362794, at *8.  To
satisfy its burden, the movant must do "more than simply
assert[] that another forum would be more appropriate for the
witnesses; he must show that the witnesses will not attend or
will be severely inconvenienced if the case proceeds in the
forum district."  Id. (quoting Roberts Metals, Inc., 138 F.R.D.
at 93).  Further, "[t]o sustain a finding on [this factor] . . .
the party asserting witness inconvenience has the burden to
proffer, by affidavit or otherwise, sufficient details
respecting the witnesses and their potential testimony to enable
a court to assess the materiality of evidence and the degree of
inconvenience." Eaton v. Meathe, No. 1:11-cv-178, 2011 WL
1898238, at *3 (W.D. Mich. May 18, 2011) (quoting Rinks v.
Hocking, 1:10-CV-1102, 2011 WL 691242, at *3 (W.D. Mich. Feb.
16, 2011)) (internal quotation marks omitted).  It is the

"materiality and importance of the testimony of prospective witnesses, and not merely the number of witnesses," that is crucial to this inquiry.  <u>Rinks</u>, 2011 WL 691242, at *3.

Apple contends that witness convenience favors transfer to the Northern District of California.  (ECF No. 22-1 at 7-9, ECF No. 39 at 7-8.)  To support this contention, Apple asserts that a majority of the witnesses on which it intends to rely are located in the transferee district.  These witnesses include Apple's employees; employees of third parties such as Netflix and Hulu, both of which are non-parties to the instant litigation that B.E. has indicated produce products that infringe the patents-in-suit; and approximately nine non-party witnesses related to prior art.  (ECF No. 22-1 at 7-9; ECF No. 39 at 7-8.)

In response, B.E. argues that "transfer to the Northern District of California would be expensive and inconvenient to B.E.'s witnesses, none of whom is located in the Northern District of California."  (ECF No. 30 at 8.)  B.E. identifies Hoyle, the named-inventor of the patents-in-suit and founder and CEO of B.E., as its key witness who is located in the Western District of Tennessee.  (<u>Id.</u> at 5, 7-8.)

Because the convenience of party and non-party witnesses is given different weight, the Court will analyze the witnesses separately.  <u>See</u> <u>Azarm v. $1.00 Stores Servs., Inc.</u>, No. 3:08-

1220, 2009 WL 1588668, at *4 (M.D. Tenn. June 5, 2009) ("[T]he convenience of potential non-party witnesses, who are not subject to the control of the parties, is a particularly weighty consideration, because it is generally presumed that party witnesses will appear voluntarily in either jurisdiction, but non-party witnesses, with no vested stake in the litigation, may not.").

### 1.  Party Witnesses

Apple asserts that "Apple employees most knowledgeable about the design, development and operation of its accused products are located in the Northern District of California." (ECF No. 22-1 at 3.)  Apple also states that, to its knowledge, "no Apple employees involved in the development or management of the accused products work in the Western District of Tennessee." (Id.)  In its Reply, Apple defends its general identification of potential employee-witnesses by stating, "it is permissible to infer, absent any contrary evidence from the non-movant, that witnesses are located at or near the center of the allegedly infringing activities and that witnesses involved in the design and manufacture of the accused products are material." (ECF No. 39 at 7 (quoting Koh v. Microtek, Int'l, Inc., 250 F. Supp. 2d 627, 636-37 (E.D. Va. 2003)) (internal quotation marks omitted).)

Apple does not provide any evidence showing that any employees will be unwilling to testify in this district if asked to do so or how such employees will be "severely inconvenienced" if the case proceeds in this district.  See Esperson, 2010 WL 4362794, at *8.  Moreover, courts have noted that "normally a corporation is able to make its employees available to testify when needed."  Clark v. Dollar Gen. Corp., No. 3-00-0729, 2001 U.S. Dist. LEXIS 25975, at *9 (M.D. Tenn. Mar. 6, 2001); see also Zimmer Enters. V. Atlandia Imps., Inc., 478 F. Supp. 2d 983, 991 (S.D. Ohio Mar. 14, 2007) (finding that the convenience of witnesses who are employees "will not ordinarily be considered, or at least, that the convenience of such employees will not generally be given the same consideration as is given to other witnesses").  Accordingly, it appears that Apple's employees will be able to attend absent any evidence to the contrary.

Therefore, regarding Apple employees, Apple cannot satisfy its burden.  Apple argues that due to the distance between Memphis and the Northern District of California, approximately 1800 miles, travel to Memphis would be burdensome, less cost-efficient, and less convenient.  (ECF No. 22-1 at 7.)  Yet, the same is true for B.E.'s witnesses, which B.E. asserts do not reside in the Northern District of California.  (ECF No. 30 at 8.)  Therefore, because § 1404(a) provides for transfer "to a

more convenient forum, not to a forum likely to prove equally
convenient or inconvenient," distance of travel for employee
witnesses does not weigh in favor of transfer.  Hunter Fan, 2006
WL 1627746, at *2 (citing Van Dusen v. Barrack, 376 U.S. 612,
645-46 (1964)).

Apple further argues that "this factor strongly favors
transfer" because "an overwhelming majority of the known likely
witnesses" are located in the transferee district and it is
likely that Apple's business will be disrupted, whereas B.E.
only identified one witness, Hoyle, who is also an interested
party.  (ECF No. 22-1 at 8.)  Although Apple does not
specifically list its witnesses, and though its assertion is
imprecise as to the materiality of the witnesses' testimony, it
is not asserted that their testimony will not be relevant and
material in this case.  Apple's general statement, however, that
it believes material witnesses are located in California does
not aid the court in assessing (1) what the testimony of such
additional material witnesses will be; (2) whether such
witnesses will be unable to attend; or (3) whether and to what
extent such witnesses will be inconvenienced by testifying in
this district.  Apple relies on a United States District Court
for the Eastern District of Virginia case, Koh v. Microtek
International, Inc., 250 F. Supp. 2d 627 (E.D. Va. 2003), for
the proposition that although a motion to transfer must normally

13

contain specifics as to the "names, titles and locations of witnesses and the content of their testimony," that, "absent contrary evidence from the non-movant," district courts can infer witnesses are located near the infringing activities and "that witnesses involved in the design and manufacture of the accused products are material." (ECF No. 39 at 7 (quoting Koh, 250 F. Supp. 2d at 636-37) (internal quotation marks omitted).) Recognizing that Koh is persuasive authority, the Court also notes that Apple misapplies it to the facts of the instant case. In Koh, the court stated, "although the Movants have not set out specifically any potential testimony, they have identified one individual who is located in California and two entities located in California, which participated in conception and reduction to practice of the accused product." Koh, 250 F. Supp. 2d at 637. In the instant case, Apple has not identified specific witnesses that "participated in [the] conception and reduction to practice of the accused products." To the contrary, Apple has only generally asserted that "[t]he foreseeable Apple witnesses with knowledge of the research, design, and development of the accused products reside or work in or near Cupertino[, California]." (Buckley Aff., ECF No. 22-5 ¶ 4.) Apple cannot rely on such "bare allegations" to satisfy its burden. Esperson, 2010 WL 4362794, at *8.

While B.E. did not specifically identify any witnesses beyond Hoyle, B.E. does not have the burden to do so.  Despite B.E. not identifying any individuals beyond Hoyle, Apple's general identification of material witnesses who are Apple employees does not satisfy its burden on this factor.  A simple numerical advantage is insufficient on the issues raised by a motion to transfer.

Moreover, B.E. argues that "[i]t is likely that Apple's California-based employees will be deposed in California where B.E.'s lead counsel is based."  (ECF No. 30 at 10.)  This further indicates that the witness-convenience factor does not weigh in favor of transfer.  See Hunter Fan, 2006 WL 1627746, at *2 (finding relevant that the plaintiff planned to take depositions of the defendant's witnesses in California in determining that the witness convenience factor did not favor transfer).

### 2.  Non-Party Witnesses

While convenience to party witnesses is an important consideration, "it is the convenience of non-party witnesses, rather than employee witnesses . . . that is the more important factor and is accorded greater weight." Steelcase Inc. v. Smart Techs., 336 F. Supp. 2d 714, 721 (W.D. Mich. Mar. 5, 2004) (citation omitted) (internal quotation marks omitted). Initially, Apple admits that it has "not identified relevant

15

third-party witnesses." (ECF No. 22-1 at 8.) Apple later asserts, however, that it will likely rely on approximately nine non-party witnesses, all of whom are likely located within the transferee district, who have knowledge about prior art related to the patents-in-suit. (Id. at 9.) Apple states that it "will likely need to gather documents and information through deposition from many of these individuals" in preparation of its invalidity defenses. (Id.)

Apple also contends that because B.E. added additional products produced by non-parties – namely Hulu, Netflix, and YouTube – when it provided its infringement contentions, there is an increased likelihood "that testimony will be required of non-party witnesses who possess material information, but who are unwilling to testify." (ECF No. 39 at 8.) Apple contends that each of these entities is located in California, with Netflix and Hulu located within the transferee district. (Id. at 6.) As a result, Apple argues that the Northern District of California is the more convenient district.

B.E. argues that the convenience of third-party witnesses is not entitled to great weight in the instant case because Apple has not established that the "third party testimony will be material or important." (ECF No. 30 at 10.) B.E. argues that Apple has not stated the "relevance, materiality, and importance of the testimony any witness who allegedly could not

16

be subpoenaed might give." (Id. at 11.) B.E. further argues that prior-art testimony is "almost certain to be severely limited at the time of trial" and, therefore, such testimony does not weigh in favor of transfer. (Id. at 10-11.)

The availability of compulsory process for unwilling witnesses is a consideration closely related to the convenience-of-witnesses factor and the costs of procuring the witness, and therefore is an important consideration for the Court. See, e.g., In re Acer, 626 F.3d at 1255; Rinks, 2011 WL 691242, at *4. Whether this factor should be given considerable weight depends on the materiality of the testimony to the resolution of the case. Rinks, 2011 WL 691242, at *4. A federal court in the Northern District of California would likely be able to compel the non-party witnesses to testify at trial. See Fed. R. Civ. P. 45(b)(2). In contrast, the non-party witnesses would not be subject to the subpoena power in this district, see Fed. R. Civ. P 45(c)(3)(A)(ii), but would be available for deposition in the Northern District of California if unwilling to testify in this district. Therefore, the testimony of such witnesses potentially would "not be live and therefore could be less persuasive." Rinks, 2011 WL 691242, at *4.

Apple, however, has not disclosed the particulars of the testimony of the potential non-party witnesses, nor why depositions of non-party witnesses would be inadequate and live

testimony from non-party witnesses required.  To the extent the
non-party witnesses' testimony may be presented by deposition,
witness inconvenience would not be an issue.  Apple merely
states that it "will likely need to gather documents and
information through deposition" from these individuals to
prepare its invalidity defenses.  (ECF No. 22-1 at 9.)
Regarding the third-party witnesses of Hulu, Netflix, and
YouTube, Apple merely states that their testimony is "likely"
required.  (ECF No. 39 at 7.)  These general statements are not
sufficient to allow the Court to determine whether live
testimony of Apple's non-party witnesses is necessary.  Further,
Apple does not state whether it is aware that any of the non-
party witnesses would be unwilling to testify in this district
if asked to do so.  (But see id. at 8 ("Because B.E. has accused
additional products of non-parties, it has increased the
likelihood that testimony will be required of non-party
witnesses who possess material information, but who are
unwilling to testify.").)  As a result, this factor does not
weigh in favor of transfer.

    **B.   Convenience of the Parties**

    Apple argues that the Northern District of California is
"plainly the more convenient forum in which to litigate B.E.'s
claims against Apple."  (ECF No. 22-1 at 1.)  While Apple
organizes its arguments somewhat differently than the Court, the

Court finds the considerations relevant to the convenience-of-the-parties factor are the location of the sources of proof and the parties' financial hardships due to litigation in the chosen forum.

### 1.   Location of Sources of Proof

Apple argues that "the vast majority of physical and documentary evidence relevant to the issues of Apple's alleged infringement, invalidity, and damages is located in California, and none is known to be located in Tennessee." (ECF No. 22-1 at 7.) Apple contends that the "bulk of documents relevant to this case are likely to come from Apple, and now Netflix, Hulu and YouTube, increasing the weight of [this factor]." (ECF No. 37 at 6.)

B.E. argues that, because its CEO resides in the Western District of Tennessee, its corporate documents and records, "including documents demonstrating the conception and reduction to practice of [the patents-in-suit]," are located in the Western District. (ECF No. 30 at 5, 7.) B.E. notes that while Apple's sources of proof are located in the Northern District of California, B.E.'s own sources of proof are located in Tennessee and have been maintained there for years. (Id. at 12.) B.E. also contends that "the location of relevant documentary evidence is increasingly less important in deciding motions to transfer," and that because documents can be exchanged

19

electronically, the weight given this factor should be minimal. B.E. finally argues that this factor does not weigh in favor of transfer because "it can be expected that Apple will eventually produce its documents to B.E.'s lead counsel in California, not to B.E. in Tennessee."  (Id. at 13.)

As an initial matter, the Court disagrees with B.E.'s contention that advances in electronic document transfer reduce the importance of the location-of-sources-of-proof factor.  This notion has been expressly rejected by the Federal Circuit.  See, e.g., In re Link_A_Media Devices Corp., 662 F.3d 1221, 1224 (Fed. Cir. 2011) (reversing a district court that did not consider the factor, stating, "While advances in technology may alter the weight given to these factors, it is improper to ignore them entirely"); In re Genentech, Inc., 566 F.3d 1338, 1345-46 (Fed. Cir. 2009) (finding clear error where a district court "minimized the inconvenience of requiring the petitioners to transport their documents by noting that '[t]he notion that the physical location of some relevant documents should play a substantial role in the venue analysis is somewhat antiquated in the era of electronic storage and transmission'" (quoting Sanofi-Aentis Deutschland GmbH v. Genentech, Inc., 607 F. Supp. 2d 769, 777 (E.D. Tex. 2009))).

The Court agrees that it is likely that the sheer volume of documents Apple has in its possession, as well as the

potentially discoverable documents of third-parties, outnumbers the patent-related documents in B.E.'s possession, but the Court disagrees that this is enough to tip the balance in favor of transfer.  The Court finds that both parties maintain documents in their respective districts; that both sets of documents will be integral to the proceedings; and that Apple will be expected to serve its documents on B.E.'s counsel in Northern California, not in the Western District of Tennessee (see ECF No. 30 at 13). Apple's reliance on In re Nintendo and L&P Property Management Co. v. JTMD, LLC, No. 06-13311, 2007 WL 295027 (E.D. Mich. Jan. 29, 2007), is misplaced.  (See ECF No. 22-1 at 8.)  In both of those cases the courts found there were no relevant documents in the transferor district, therefore transfer was appropriate. See In Re Nintendo, 589 F.3d at 1199-1200; L&P Prop. Mgmt. Co., 2007 295027, at *4.  In the instant case, B.E. has shown that relevant documents are located in Tennessee.  Taken together, the aforementioned facts indicate that as to the location of the sources of proof, the Northern District of California is a somewhat more convenient venue for the parties to the instant case.  This factor, however, is not sufficient, by itself, to require transfer.

### 2.   Financial Hardships Attendant to Litigating in the Chosen Forum

Apple argues that its employees with "knowledge relevant to this litigate are located in California, over 1,700 miles from Memphis." (ECF No. 22-1 at 7.)  As a result, Apple contends that "it is more cost-efficient and more convenient for witnesses to testify at home," and the "engineers, designers, and software developers likely to be called at trial are integral contributors to Apple's operations, and the disruption caused by taking them away from their jobs to testify in Tennessee is not offset by any corresponding inconvenience" to B.E.  (ECF No. 22-1 at 7-8.)

B.E. states that it "would face a financial burden by having to litigate in the Northern District of California." (ECF No. 30 at 14.)  B.E.'s CEO Hoyle states that "B.E. will incur expenses it will not incur if the case remains in Memphis."  (Hoyle Aff., ECF No. 30-1, ¶ 9.)  B.E. also states that "[i]t is reasonable to require companies with the wealth and size of Apple to litigate in jurisdictions in which they regularly conduct business."  (ECF No. 30 at 7.)

The Court has considered "the relative ability of litigants to bear expenses in any particular forum" among the factors in a § 1404(a) case.  Ellipsis, Inc. v. Colorworks, Inc., 329 F. Supp. 2d 962, 970 (W.D. Tenn. 2004).  In the instant case,

B.E.'s CEO stated that the company will incur additional expenses, but it has not shown with any specificity how detrimental those expenses would be to the company.  Further, while Hoyle stated that his personal financial status would be adversely affected by litigating in the Northern District of California, he did not state why or how his personal finances would impact B.E., the party to the instant case.  (ECF No. 30-1 ¶ 9.)  B.E. has shown that Apple has the ability to bear expenses in this forum (see ECF No. 30-3), but the Court does not find this to be a dispositive factor in denying Apple's Motion.  But see Siteworks Solutions, LLC v. Oracle Corp., No. 08-2130-A/P, 2008 WL 4415075, at *4 (W.D. Tenn. Sept. 22, 2008) (finding the relative financial strengths of the parties did not weigh in favor of transferring the case, as the party opposed to transfer showed it "ha[d] no net worth, very little revenue, no gross profits, no assets, and [would have to] borrow from its owners in order to pay the litigation expenses").  The Court finds that the evidence presented is insufficient to make a showing that B.E. or Apple will be adversely affected by litigating in either forum.  The paramount consideration remains whether the Northern District of California is more convenient to the parties than B.E.'s chosen forum.

     With respect to convenience, the Court finds this factor does not weigh in favor of transfer.  While Apple has made a

showing that its business would be disrupted by the absence of
its proposed witnesses, B.E. has made an equal showing that its
business would be disrupted in having to prosecute the instant
case in California.  Apple has shown that the Northern District
of California would be a more convenient forum for it, but it
has not shown that the Northern District of California is a more
convenient forum for both parties.  As a result, the hardship to
Apple does not indicate transfer is more convenient.

### C.   Interests of Justice

Apple argues that transfer to the Northern District of
California is appropriate based on additional considerations
that pertain to the interests-of-justice factor.  (ECF No. 22-1
at 12-13; ECF No. 39 at 9.)  These considerations include the
"public-interest concerns, such as systemic integrity and
fairness," of the proceedings.  See Moore, 446 F.3d at 647 n.1.
In the instant case, the Court will consider the relative trial
efficiency of the transferee and transferor districts and the
localized interest in the litigation.

### 1.   Trial Efficiency

Apple argues that this factor is relatively neutral, as the
two districts "have roughly similar levels of congestion and
cases are disposed of slightly faster in California than in [the
Western District of Tennessee]."  (ECF No. 22-1 at 13.)  Apple

admits that "each court is fully capable of applying federal patent law to the present case." (Id.)

B.E. argues that transfer to the Northern District of California "would likely delay trial of this case by at least one year." (ECF No. 30 at 14.)  B.E. cites the 2011 Federal Court Management Statistics for both districts to illustrate that the median time from filing to trial in the Northern District of California was 35.4 months, while the median time from filing to trial in the Western District of Tennessee was 20.8 months. (Id. (citing ECF No. 30-4).)

The Court agrees with Apple and finds this factor neutral to its determination of whether the Northern District of California is the more convenient forum.

### 2.   Local Interest

Apple argues that the Northern District of California has strong local ties to the instant case because Apple is located there, the sources of proof are located there, and the alleged infringement took place there. (ECF No. 22-1 at 12.)  Apple contends that it has no "design, development or manufacturing presence in Tennessee." (Id.)  Though it recognizes that it sells products in Tennessee, Apple argues that "the local interest of a forum is not entitled any unique weight when the accused products are distributed on a national scale." (ECF No. 39 at 9 (citing In re TS Tech USA Corp., 551 F.3d 1315, 1321

25

(Fed. Cir. 2008)).)  Apple also asserts that B.E.'s ties to the Western District of Tennessee should be discounted because it manufactured those ties in anticipation of litigation.  (ECF No. 22-1 at 12.)  Apple also argues that the Northern District of California has a "strong local interest in resolving claims leveled against its residents."  (Id. at 12-13.)

B.E. argues that the Western District of Tennessee has a substantial local interest in the instant case because the holder of the patent-in-suit is located here.  (ECF No. 30 at 15.)  B.E. also asserts that its ties to Tennessee are not "recent, ephemeral, or manufactured for the purposes of litigation."  (Id.)  Hoyle stated that he has resided in the Western District of Tennessee since 2006, that Memphis is B.E's principal place of business, and that the sources of proof pertinent to the instant case are located in the district. (Hoyle Aff., ECF No. 30-1, ¶¶ 2-4, 7-8.)

The Court finds that this factor does not weigh in favor of transfer.  While Apple has strong local ties to the Northern District of California, the Court finds that B.E.'s connection to the Western District of Tennessee was not manufactured for the purposes of litigation.  B.E.'s founder and CEO, who is also the holder of the patent-in-suit, has resided in the district for seven years.  B.E.'s connections, therefore, are neither "recent" nor "ephemeral."  As a result, Apple has not

26

demonstrated that the Northern District of California's local
interest outweighs that of the Western District of Tennessee.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds that, in
balancing the statutory factors, Apple has not demonstrated that
the Northern District of California is a more convenient forum
than the Western District of Tennessee.  Therefore, Apple's
Motion to Transfer Venue is DENIED.

Accordingly, the Court hereby LIFTS the February 11, 2013,
stay of all proceedings.  (ECF No. 42.)  Regarding B.E.'s Motion
to Dismiss and Motion to Strike, filed January 25, 2013 (ECF No.
38), Defendant shall have seventeen (17) days from the date of
entry of this Order, up to and including July 8, 2013, to file
its Response to B.E's Motions.

**IT IS SO ORDERED** this 20th day of June, 2013.


s/ Jon P. McCalla_____
CHIEF U.S. DISTRICT JUDGE